JACHARLES V. CUSIMANO, II, Judge, Pro Tem.
The Louisiana Patient’s Compensation Fund (“LPCF”) is appealing the decision of the lower court granting the plaintiff’s Petition for Declaratory Judgment, which declared Lakeside Hospital a “qualified health care provider” (“QHCP”) for the purposes of this particular claim and approving the settlement between the plaintiffs and Lakeside Hospital. We affirm.

ISSUES

The issues presented are:
(1) Whether the trial judge erred in finding Lakeside Hospital to be a QHCP under *64 the Louisiana Malpractice Act for the purposes of this claim, and
(2) Whether the trial judge erred in approving the settlement between the plaintiffs and Lakeside Hospital.

\ ¿FACTS AND PROCEDURAL HISTORY

In September 1988, the plaintiffs below, Dr. and Mrs. Charles Bramlett, filed a Petition for Damages for medical malpractice, stemming from treatment Dr. Bramlett received at the hospital,[1] against Lakeside Hospital and other defendants. By letter dated September 8, 1988, the Commissioner of Insurance informed Lakeside Hospital that it was not qualified as a QHCP under La.R.S. 40:1299.41 et seq. for the purposes of the Bramlett claim. On January 12, 1989, the Commissioner of Insurance, again by letter, notified Lakeside Hospital that it was, in fact, considered a QHCP under La.R.S. 40:1299.41 et seq. for the Bramlett claim.
Lakeside Hospital then filed an Exception of Prematurity, claiming to be a QHCP under La.R.S. 40:1299.41 et seq. In June 1990, the Bramlets again amended their petition to include Lakeside Hospital as a defendant subsequent to presentation of this matter to a medical review panel as required by La. R.S. 40:1299.47. In November 1994, the plaintiffs filed a third amended petition and a motion to substitute parties upon the death of Dr. Bramlett.
On December 6, 1994, the plaintiffs filed a fourth amended petition for judicial approval of a settlement with Lakeside Hospital under La.R.S. 40:1299.44(C). In their amended petition, the plaintiffs reserved the right to “proceed against and seek additional damages from the LOUISIANA PATIENT’S COMPENSATION FUND under the provisions of La.R.S. 40:1299.41, et seq.” Additionally, the plaintiffs filed a Petition for Declaratory Judgment, seeking to have Lakeside Hospital declared a QHCP for this suit. By letter dated December 22,1994, the LPCF had advised the attorneys for Lakeside Hospital that the Fund was withdrawing its certification of Lakeside Hospital as a QHCP for this claim.
_JjOn January 26, 1995, the LPCF filed a Rule to Show Cause, objecting to the settlement reached between the plaintiffs and Lakeside Hospital. Then, on January 30, 1995, the LPCF filed an Exception of No Cause or Right of Action and a Rule to Dismiss the Petition for Declaratory Judgment. The trial judge denied these exceptions after a hearing. In his Reasons for Judgment, he essentially found that Lakeside Hospital was a QHCP for this claim. After a hearing on LPCF’s Rule objecting to the settlement reached by the plaintiffs and Lakeside Hospital, and the plaintiffs’ Petition for Declaratory Judgment, the trial judge granted the Petition for Declaratory Judgment and declared Lakeside Hospital a QHCP for this claim and judicially approved the settlement in question. LPCF has appealed this decision.

ISSUE ONE

The appellant argues that Abate v. Healthcare Int’l, Inc., 560 So.2d 812 (La. 1990) is controlling jurisprudence for this matter. First, it must be noted that in Abate, the plaintiffs were complaining that the health care providers could not be qualified through retroactive application of a surcharge payment. In the case before us, it is the LPCF as defendant that is trying to deny coverage some six years after notifying all the parties to this suit that Lakeside Hospital was a QHCP for the purposes of this claim. Further, the LPCF provided several certificates of enrollment in response to interrogatories, and each one showed the effective enrollment date as September 1, 1987, prior to the alleged malpractice.
In Abate, supra, the defendants claimed to be QHCPs for the purposes of the medical malpractice claims brought against them because, at the time the LPCF allowed retroactive coverage, the insurance policy provided “claims made” coverage. In fact, one of the physicians in Abate, supra, at 814 had specifically rejected coverage for the period for which he was claiming retroactive coverage. Additionally, the certification of enrollment supplied by the Commissioner of |4Insurance indicated that enrollment began a year after the alleged malpractice, August 15,1986. Id. *65 at 814 n. 4. However, in response to an inquiry, it was stated that coverage would be applied retroactively because the doctor’s insurance policy was “ ‘claims made.’ ” Id.
The other claim in Abate involved two physicians who showed proof of payment of the required surcharge along with their “claims made” policy to show they were entitled to retroactive coverage by LPCF. Id. at 815. The Louisiana Supreme Court held that these health care providers were not qualified at the time of the tortious conduct and there could not be retroactive coverage. Id. at 813.
In the case before us, in addition to the surcharge, a late penalty was paid. After denying coverage to Lakeside Hospital, the Commissioner of Insurance notified all the parties in this case that:
it has been determined that an oversight on the health care providers!’] part caused the surcharge not to be paid for a period of time. When the oversight was discovered, the proper surcharge and resulting penalty was paid to restore the coverage in the PCF. We are therefore now informing you that the health care provider is “QUALIFIED” in this matter with effective dates of coverage of 9/1/87-9/1/89 through St. Paul Fire & Marine.
In a letter dated eight months later, the Deputy Commissioner of the LPCF stated:
In further analyzing this situation we determined that St. Paul was providing primary coverage from September 1, 1987. Initial entry into the PCF by the Lakeside was for the period May 15, 1988 to September 1, 1988. Renewal surcharge for the annual period of September 1, 1988/89 was remitted to the PCF within the 45 days required from the date of expiration of the prior period coverage. Therefore, upon receipt of the surcharge we should have informed all parties that Lakeside was qualified because of the claims made coverage feature of the primary policy.
Subsequently upon satisfaction of the explanation of a reporting error on the part of an employee and upon |5payment of the appropriate surcharge and penalty we corrected our records to show an effective policy period beginning September 1,1987.
It was only after a settlement had been reached between the plaintiffs and Lakeside Hospital, after many years of repeatedly confirming the hospital’s coverage for this claim, that the LPCF reversed itself and declared Lakeside Hospital not to be a QHCP for this claim. This reversal by LPCF occurred in 1994 — four years after the Abate decision, which was rendered in April 1990. Abate, supra, at 812. In November 1990, again in November 1991 and April 1994, and, finally, in December 1994, the LPCF issued certificates of enrollment that each listed Lakeside Hospital’s beginning enrollment date as September 1,1987.
Lakeside Hospital, as appellee, argues that the LPCF is equitably estopped from denying its qualification, and we agree. In 1975, the Louisiana Supreme Court defined equitable estoppel and listed the required elements as “(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance.” Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975) (citations omitted). Further, the Louisiana Civil Code states “[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.” La.Civ. Code art. 1967.
In the case before us, Lakeside Hospital relied on the assertions of the LPCF that it was a QHCP for this claim. The Louisiana Supreme Court rendered the Abate decision in 1990. The LPCF did absolutely nothing between the time that decision was rendered and the time the plaintiffs settled with Lakeside Hospital, some four years later, that would have led any party to this suit to question Lakeside Hospital’s qualification. In fact, the LPCF issued certificates of enrollment in 1990, 1991, and 1994, which showed Lakeside Hospital was a |6QHCP since September 1, 1987. We also note as illustrative that, in an insurance claim, “when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured’s defense without obtaining a nonwaiver agreement to *66 reserve its coverage defense, the insurer waives such policy defense.” Steptore v. Masco Const, Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213, 1216 (citations omitted). We find the trial judge was correct in finding Lakeside Hospital was a QHCP for the purposes of this claim.

ISSUE TWO

The appellant next argues that the trial judge erred in approving the settlement reached by the plaintiffs with Lakeside Hospital. We find no merit in this assignment of error. At the hearing on this matter, this discussion occurred between the attorney for the LPCF and the judge:
MR. BAKER:
I don’t see how this Court can approve the settlement in the absence of any other evidence which would controvert that favorable medical review panel opinion.
THE COURT:
Because the panel asked me to.
MR. BAKER:
Well, I haven’t had the opportunity to cross examine the panel, Your Honor.
THE COURT:
Well, I mean, that’s the nature of a settlement. Both parties, or all parties agree that it’s in their best interest to enter into a settlement; and if it turns out later that they could have won a case if they settled, then you don’t upset the settlement because of that possibility.
The appellant argues that La.R.S. 40:1299.44(0(7) requires good faith and reasonable care be exercised in considering and acting upon a settlement. There is absolutely nothing in the record or even in the appellant’s brief which leads this pCourt to believe that the parties to the settlement below did not act in good faith in reaching this settlement. We find no merit in this assignment of error.
Because we find no merit in any of the assignments of error made by the appellant, we affirm the trial court’s ruling. All costs of this appeal are to be assessed against the appellant.

AFFIRMED.

. This appeal concerns no defendants other than Lakeside Hospital.